Van Geisen *agt.* Fuller.

---

Again, both parties having entered into a deed *inter partes,* and executed it in their own names, and not having executed it in the names of their principals, ought not to be allowed to withdraw from its well known and long established legal effect.

> D. D. LORD, *Attorney of defendant in error.*
> D. LORD, *of Counsel.*

☞ 19 *J.* 60 is overruled by 4 *H.*, or if not is put upon the ground contract by public agents. (*Delaware Canal* v. *Dubois,* 4 *W.; Story Ag.* § 278.) Comments on these cases. Doubtful authority at best, though distinguishable. ☜

*Not reported in this court.*

---

VAN GEISEN, plaintiff in error, *agt.* FULLER, defendant in error.

### Questions discussed.

1. Whether a mortgage *sale* made in pursuance of a decree of foreclosure, which described the greater part of the premises situated in the *wrong county,* where the sale was made, was *inoperative and void?*

2. Whether the purchaser under a mortgage sale, who has received his deed, can bring ejectment before *confirmation of the sale?* And whether the doctrine of *relation* applies, after confirmation?

This was an action of ejectment brought by Fuller against Van Geisen for certain premises situated in the town of Clarkson, county of Monroe, containing 230 acres.

Van Geisen *agt.* Fuller.

The cause was tried at a circuit court held at Rochester, in April, 1842. Hon. NATHAN DAYTON, Circuit Judge. A special verdict was found, by which it appeared that the premises in question, with other lands, situated in the counties of Monroe and Orleans, were mortgaged by one Henry Davis and his wife to the Farmers' Fire Insurance and Loan Company in December, 1833, to secure $12,000. In February, 1834, Davis and wife conveyed the premises in question, in fee, to Henry J. Hollister, who conveyed the same in fee to Abraham M. Schermerhorn on the 27th March, 1835. On the 24th February, 1840, the Farmers' Loan and Trust Company as successors, by statute, (*Sess. Laws,* 1836,) of the Farmers' Fire Insurance and Loan Company, filed their bill of complaint before the chancellor for the foreclosure of this mortgage. That besides Henry Davis and wife, the mortgagors, Abraham M. Schermerhorn and wife, Joseph D. Beers, President of the North American Trust and Banking Company, and others, were made defendants, as persons claiming some interest in the mortgaged premises, &c., but Cornelius Van Geisen, the defendant, was not made a party.

The bill of complaint was duly taken as confessed by all the defendants. A reference was ordered, to ascertain the amount, and a decree entered directing that the mortgaged premises " be sold at public auction according to the course and practice of said court, by or under the direction of Benjamin L. Bessac, one of the masters of said court, residing in the county of Orleans; that the said sale be made in the county where the mortgaged premises, or the *greater part thereof*, were situated, &c. The decree proceeded to give the usual directions, and some special directions as to the sale of any parcels of the premises sold since the execution of the mortgage.

That lot No 4, sec. 11, town 4, lots 10, 11, and 12, sec. 7, town 4, in all containing 480 acres, were described in said decree as situate in the town of Clarendon, and county of Orleans, whereas in fact, the same was situate in the town of Clarkson, and county of Monroe; so that from the decree it appeared that the greater part of the lands directed to be sold were situate in the town of Clarendon, and county of Orleans, when in fact

16

the greater part thereof were situate in the town of Clarkson, and county of Monroe. But the aggregate value of the lands situate in the county of Orleans was greater than that of the lands situate in the county of Monroe.

On the 11th of September, 1841, at the village of Albion, in the county of Orleans, the master sold the premises in question, which were bid off by the plaintiff Fuller; and on receiving the amount of the purchase, gave Fuller a master's deed.

That the defendant, Van Geisen, was in possession of the premises in question prior to the filing of the bill of complaint, and continued in possession until after the commencement of this suit. Fuller exhibited to Van Geisen his master's deed, and informed him that he had become the owner of the premises, and inquired of Van Geisen by what right he claimed to hold said premises, and Van Geisen replied, " that he went into possession under a contract for the purchase of said premises made between him and Abraham M. Schermerhorn. The said James C. Fuller then inquired of the defendant if he had made the payments for the said land to the said Schermerhorn, as they became due according to the terms of his agreement with the said Schermerhorn; and he replied that he had not. That Fuller then informed him that if he would pay to him the amount which he had promised to pay said Schermerhorn for said lands, and which he had not been paid, that he, said Fuller, would convey to him the said lands. This the defendant declined doing; and stated that he did not intend ever to pay anything further toward the purchase of the lands. That Fuller then demanded possession of said lands from the said defendant, which the defendant refused to give, and thereupon this suit was commenced on the 9th day of October, 1841." The order for confirmation of the report of the master's sale became absolute on the 20th of January, 1842.

The charter of the Farmers' Loan and Trust Company contained a provision that " all sales under the mortgages to be taken or holden by the said corporation, &c., shall be made in the county where the said mortgaged property shall be situated."

Van Geisen *agt.* Fuller.

Judgment was rendered for plaintiff for the possession of the premises at January term, 1843. (*Reported* 4 *Hill*, 171.)

The defendant brought a writ of error, and removed the judgment into this court.

*Haight & Chase, Attorneys and*
*Chauncey Tucker, Counsel* for plaintiff in error.

*First.* The sale under which the defendant in error claims title to the premises described in the declaration, was inoperative and void, because the same was not made in the county where the property was situated. (*Sess. Laws of* 1822, *ch.* 50, § 3, *p.* 47 ; 21 *Wend.* 467 ; *Sess. Laws of* 1836, *p.* 281.)

*Second.* Although the sale should be deemed legal, the defendant in error was not entitled to recover, because at the time of commencing his suit, the sale had not been confirmed. (13 *Ves.* 517 ; 11 *id.* 559, *ex parte Minor.*)

1. The decree upon foreclosure provides that the purchaser be let into possession of the premises on production of the master's deed, and a certified copy of the order confirming the sale, if the same has become absolute. (*Rule* 135 *of court of chancery.*)

2. Independent of the provisions of the decree, the purchaser has only a contingent title until the order confirming the sale has become absolute, as until that time the purchaser or any party in interest may apply for a resale. (*Brown* v. *Frost,* 10 *Paige,* 247.)

3. The doctrine of relation has no application to this case. (*Ward* v. *Sackrider,* 3 *Caines,* 263 ; *Jackson* v. *Bard,* 4 *Johns.* 234 ; 16 *Viners Ab.* 293 ; *A. Lifford's case,* 11 *Coke,* 51.)

HAIGHT & CHASE, *Attorneys for plaintiff in error.*
F. M. HAIGHT, *of Counsel.*

☞ Sp. verdict—judgment for plaintiff—decree to sell in co. where greater part of mortgaged premises situated—greater part was in Monroe—sale in Orleans—but by mistake in decree stated, were to be in *Clarendon,* which is Orleans, when in fact were in *Clarkson,* which is in Orleans (now Monroe)—sale confirmed—no objection having been made—deed given before

order confirmation—first and greater part sale void because not made in proper county—in fact, partition was in both counties.

I. Decree, as to place of sale, is *not an adjudication of a matter in controversy, but a direction for the doing of a thing in futuro.*

7th J. 217; reject false and mistaken circumstances—that rule gives plaintiff this land—without it, he gets nothing—if good rule for him, it is for us also—same rule for both parties —mere direction to master—he must look at whole description and find out where to sell—error of his—not in *judgment of court.* (2 *R. S.* 255, 3*d ed.* 192, § 158.)

Order of confirmation is a mere formal order—an *order of course*—confirmed unless cause be shown in eight days.

If court against me on first point, no great hope of succeeding on the other—but still worth considering when confirmation at the time suit commenced. ☞

☞ REPLY.—General laws don't affect special provisions in a charter, unless specially mentioned. ☞

*Henry R. Selden, Attorney and Counsel, and*
*Azor Taber, Counsel* for defendant in error.

*First.* The sale of the lands under the decree in chancery, in the county of Orleans, was regular and valid, and the purchaser acquired a good title under it.

The power to foreclose mortgages and to sell the mortgaged premises is given to the court of chancery alone. (1 *R. S.* 191, §§ 151, 192, 157.)

The court has power to order where the premises shall be sold.—☞ even though out of the county. R. S. since charter, and applies to all sales in chancery. (1 *R. S.* § 157.) ☞

The master was right in selling where *from the decree* it appeared the greater part of the premises were situated; especially as the *greatest value was in fact there.*

But if he was wrong, it was a mere irregularity, which could be only objected to *by the parties,* and the confirmation of the sale concluded even them.

The provision of the charter of the Farmers' Loan Com-

Van Geisen *agt.* Fuller.

pany, limiting a sale to the county where the premises are situated, may properly be confined to statutory foreclosures. (*Laws of* 1822; *p.* 49, § 3.)

☞ *Laws of* 1822, *p.* 262, § 7. First general law that made it necessary to sell in the county—this after the charter— charter applies to *statute* sales, not to sales *under a decree in chancery.* ☜

*Second.* The sale was complete by the execution and delivery of the deed, without reference to the report or the order of confirmation. (*Hoff. Master*, 221, 222; 2 *R. S.* 192, § 158.)

But if the report and confirmation were necessary to complete the title, those things when done make the title perfect *by relation* from the execution of the deed. (1 *Johns. cases*, 75, 84, 89; 3 *Cowen*, 75, 80; 15 *Johns.* 309–316; 20 *Johns.* 3; 2 *Wend.* 507.)

*Third.* The sale gave to the plaintiff in this suit all the rights of the mortgagee, and of Schermerhorn who held as grantee of the mortgagor—subject to the rights and equities which defendant had against Schermerhorn before the sale.

The sale is at least as effectual as a statute foreclosure would have been had Schermerhorn been the mortgagor, and that would give the purchaser all the rights of mortgagor and mortgagee. (4 *Paige*, 58, 61.)

The rights of all the parties to the suit are expressly cut off by the decree; of course, they must be vested in the purchaser. (*Case, pp.* 8, 9.)

The sale was equivalent certainly to a *voluntary conveyance* by all the parties.

If then any, or all the parties to the suit united, could have maintained ejectment against Van Geisen, this plaintiff can do so.

*Fourth.* Schermerhorn before the sale could have maintained ejectment against Van Geisen—and the plaintiff being possessed of all his rights, can do it.

1st. The defendant claimed to hold under Schermerhorn, which shows that his right, whatever it might be, was subordinate to that of the parties to the suit in chancery. (*Case, p.* 12.)

2. The contract does not appear to have been in writing; and if it was, it could not be established by parol proof. (15 *Wend.* 588–592; *Cowen & Hill's Notes to Phil. Ev. p.* 544, *note* 416.)

3. But if his contract was in writing, he had made default, and was liable to ejectment. (*Jackson* v. *Moncrief,* 5 *Wend.* 26 ; *Jackson* v. *French,* 3 *Wend.* 337.)

If the defendant had any remedy, it was in equity, and could not be made available at law. (*Jackson* v. *Pierce,* 2 *John.* 221.)

4. The holding by Van Geisen was not adverse so as to affect the validity of the sale to the plaintiff, even treating it as a private sale. (*Jackson* v. *Johnson,* 5 *Cowen,* 74; *Jackson* v. *Camp,* 1 *Cow.* 605.)

The doctrine of adverse possession does not apply to sales under judgments and decrees. (*Jackson* v. *Collins,* 3 *Cow.* 89; *Jackson* v. *Anderson,* 4 *Wend.* 474.)

H. R. SELDEN, *Attorney for defendant in error.*

☞ Decree not *void*—even if erroneous. (10 *J.* 167 ; 11 *J.* 177 ; 17 *J.* 145 ; 1 *R. L.* 372,) was nothing in former law as to where statute sales should be made.

Statute charter don't touch the case where land is in two counties—that is an *omitted case*—in general law, two mos. after, leg'r. thought of case where land in two counties. No., in charter was forgotten, not thought of, (2 *R. S.* 192, § 157.) Chancellor may order sale in *any* county, in all cases. ☜

DECISION.—Judgment affirmed, unanimous.

NOTE.—It was *held,* by the supreme court, (COWEN, J., delivering the opinion,) that the master's sale passed the title presently; and the objection that the suit was prematurely brought could not avail. Besides, all question upon that matter was removed by the doctrine of relation. The confirmation of the sale related to the date of the deed; thus overreaching the claim of a mere intruder into the premises.

As to the rights of the defendant, *held,* that Schermerhorn (under whom he claimed to hold by contract) and all other proper parties having been brought into court, and the defendant being a mere naked possessor, although in before the bill was filed, had taken no title by which he stood connected in any way with the mortgagor or those claiming under him; no right of his was overreached, because he had none.

*Held,* that had the sale been made under a power contained in the mortgage,

the auction must have been in the counties respectively where the lands lay. But the provision in the charter did not take away the jurisdiction of the court of chancery. Even if the provision be regarded as mandatory and restrictive upon the court, it was but directory; and the most that could have been done by way of impeaching the decree was to appeal. The proceeding could not be inquired into collaterally. The decree binds till it is reversed. The charter might be satisfied by confining it to a summary foreclosure, by advertisement.

The master governed himself by the location appearing on the face of the decree, in which he was right. The defendants in the chancery suit were the only persons who could complain. And they were then precluded. A mere stranger could not raise the question collaterally.

Judge COWEN said the case might be stated in this way: " The decree misjudges on a material fact, the location of the land; and a stranger claims to contradict it by a special verdict."

*Not reported in this court.*